Andrea COLLINS

v.

AmSOUTH BANK.

Court of Appeals of Tennessee, at Nashville.

Sept. 12, 2006 Session.

July 26, 2007.

James L. Harris, Nashville, Tennessee, for the appellant, Andrea Collins.

C. Eric Stevens, Nashville, Tennessee, for the appellee, AmSouth Bank.

## OPINION

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL and FRANK G. CLEMENT, JR., JJ., joined.

This appeal involves a dispute between a bank and a former teller whose employment was terminated following an argument with her supervisor. The former teller filed suit against the bank in the Circuit Court for Cheatham County, asserting both statutory and common-law retaliatory discharge claims. The trial court granted the bank's motion for summary judgment after determining, based on the undisputed facts, that the teller's complaints regarding conduct she considered to be illegal were neither the sole reason nor even a substantial motivating reason for the termination of her employment and that the bank had a legitimate, non-pretextual reason for terminating the teller's employment. The teller appealed. We affirm the summary judgment.

### I.

Andrea Collins began working for AmSouth Bank in 2001. She was first assigned to the bank's West Nashville branch but was eventually assigned to the branch in Pleasant View where she worked as a teller. Ms. Collins's supervisor at the Pleasant View branch was Betty Armstrong, the assistant branch manager. Ms. Collins and Ms. Armstrong did not have a good working relationship.

On Wednesday, July 7, 2004, Ms. Collins and Ms. Armstrong got into a heated argument about how cash would be made available to a substitute teller who would be working in place of Ms. Collins on Saturday, July 10, 2004. In order to avoid being required to count the cash in the vault three times on Saturday, Ms. Armstrong told Ms. Collins to place the cash in

the night deposit drop box on Friday for use by the substitute teller on Saturday. Ms. Collins, who was the "vault teller"[1] at the branch, apparently believed that Ms. Armstrong was encroaching on her authority and refused to place cash in the night deposit drop box for the substitute teller. This triggered a vigorous argument[2] that eventually resulted in Ms. Armstrong telephoning Rick Roberts, the branch manager, for assistance.

After Mr. Roberts arrived at the branch, he interviewed both Ms. Collins and Ms. Armstrong about the incident. When Mr. Roberts became convinced that Ms. Collins had acted in a threatening manner during the argument and that Ms. Armstrong had feared for her own safety, he telephoned AmSouth's human resources department to request an immediate investigation into the incident. Amy Greene, a human resources officer, was dispatched to the branch.

Together Ms. Greene and Mr. Roberts interviewed Ms. Collins, Ms. Armstrong, and other branch employees. They learned that there had been a previous disagreement between Ms. Collins and Ms. Armstrong and that one employee who had witnessed the disagreement believed that Ms. Collins had been the aggressor. Ms. Greene subsequently informed Ms. Collins that she was being placed on administrative leave because her conduct had made Ms. Armstrong fear for her safety. Accordingly, Ms. Greene instructed Ms. Collins to leave the premises.

After Ms. Greene completed her investigation, she informed Marlene Akin, AmSouth's Human Resources Director, that she had determined that Ms. Collins had acted in an aggressive manner toward Ms. Armstrong on one prior occasion. In light of AmSouth's policy forbidding threatening behavior in the workplace, Ms. Akin, Ms. Greene, and Mr. Roberts collectively decided to terminate Ms. Collins's employment. Ms. Greene informed Ms. Collins of their decision during a telephone call on July 9, 2004.

On October 7, 2004, Ms. Collins filed suit against AmSouth Bank in the Circuit Court for Cheatham County, alleging common-law retaliatory discharge and violation of the Tennessee Public Protection Act [Tenn.Code Ann. § 50–1–304(a) (2005)]. She asserted that on July 7, 2004, she was merely questioning whether Ms. Armstrong had violated federal banking regulations and bank policy by instructing her to put the cash in the night deposit drop box. She also asserted that Ms. Armstrong violated federal banking regulations and bank policy by opening the vault herself without Ms. Collins or another employee being present. Finally, she alleged that she was fired solely because she refused to go along with Ms. Armstrong's illegal instructions.

AmSouth Bank filed a motion for summary judgment on July 25, 2005, supported by Ms. Greene's affidavit and the

---

1. The vault teller is the teller responsible for the cash kept in the vault.

2. In her deposition, Ms. Collins described the exchange as follows:

> She asked me what we were going to do with Saturday's teller money.
> I said, "I do not know."
> She said, "Well, someone's got to know."
> I said, "But I don't know."
> She said, "Well, you're going to put it … in the night drop."
> I said, "No, I'm not going to put it in the night drop."
> She said, "Yes, you are going to put it in the night drop."
> I said, "No ma'am, I'm not." …
> Betty said "You're going to do what I told you to do."
> I said, "No ma'am I'm not." … And it got hotter.

depositions of Ms. Collins, Ms. Armstrong, and Mr. Roberts. The trial court entered an order on October 27, 2005, granting AmSouth's summary judgment motion after determining that the undisputed facts demonstrated that AmSouth had a legitimate, non-pretextual reason to terminate Ms. Collins's employment and that Ms. Collins had failed to point to anything in the record that could provide a basis for concluding that AmSouth's stated reason for terminating her employment was pretextual. The trial court also concluded that the undisputed facts demonstrated that, even if Ms. Collins believed in good faith that she was complaining about an illegal activity or violation of some clear public policy, these complaints were neither the sole reason nor even a substantial motivating factor for the termination of her employment. Ms. Collins has appealed.

## II.

■ The standards for reviewing summary judgments on appeal are well settled. Summary judgments are proper in virtually any civil case that can be resolved on the basis of legal issues alone. *Fruge v. Doe,* 952 S.W.2d 408, 410 (Tenn.1997); *Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn. 1993); *Pendleton v. Mills,* 73 S.W.3d 115, 121 (Tenn.Ct.App.2001). They are not, however, appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. Thus, a summary judgment should be granted when the undisputed facts, as well as the inferences reasonably drawn from the undisputed facts, support only one conclusion—that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Pero's Steak & Spaghetti House v. Lee,* 90 S.W.3d 614, 620 (Tenn.2002); *Webber v. State Farm Mut. Auto. Ins. Co.,* 49 S.W.3d 265, 269 (Tenn.2001).

The party seeking a summary judgment bears the burden of demonstrating that no genuine dispute of material fact exists and that it is entitled to a judgment as a matter of law. *Godfrey v. Ruiz,* 90 S.W.3d 692, 695 (Tenn.2002); *Shadrick v. Coker,* 963 S.W.2d 726, 731 (Tenn.1998). When the moving party is the defendant, it is entitled to a judgment as a matter of law only when it affirmatively negates an essential element of the non-moving party's claim or establishes an affirmative defense that conclusively defeats the non-moving party's claim. *Byrd v. Hall,* 847 S.W.2d at 215 n. 5; *Cherry v. Williams,* 36 S.W.3d 78, 82–83 (Tenn.Ct.App.2000).

■ Summary judgments enjoy no presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson,* 100 S.W.3d 202, 205 (Tenn.2003); *Scott v. Ashland Healthcare Ctr., Inc.,* 49 S.W.3d 281, 285 (Tenn.2001). Accordingly, appellate courts must make a fresh determination that the requirements of Tenn. R. Civ. P. 56.01 et seq. have been satisfied. *Hunter v. Brown,* 955 S.W.2d 49, 50–51 (Tenn. 1997). We must consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Godfrey v. Ruiz,* 90 S.W.3d at 695; *Doe v. HCA Health Servs. of Tenn., Inc.,* 46 S.W.3d 191, 196 (Tenn.2001).

■ When reviewing the evidence, we must determine first whether factual disputes exist. If a factual dispute exists, we must then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall,* 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.,* 978 S.W.2d 102, 104 (Tenn. Ct.App.1998).

## III.

Ms. Collins argues on appeal that the trial court's reasons for granting AmSouth's summary judgment motion are faulty. She asserts that the trial court improperly weighed the evidence by comparing her credibility with Ms. Armstrong's and that she is entitled to have a jury determine whether she or Ms. Armstrong is telling the truth about July 7, 2004 argument. For its part, AmSouth insists that the undisputed facts can only lead to the conclusion that Ms. Collins's employment was terminated because of her inappropriate conduct toward her supervisor, not because of her refusal to participate in or remain silent regarding illegal activities. We agree with AmSouth.

### A.

■ Tennessee is an employment at-will state. Accordingly, in the absence of a contract providing otherwise, employers in Tennessee may terminate the employment of at-will employees for any or no cause. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534–35 (Tenn.2002). However, the Tennessee Supreme Court has recognized a narrow exception to the employment-at-will doctrine that prevents an employer from terminating the employment of an employee when doing so violates a clearly established public policy which will usually be evidenced by an unambiguous constitutional, statutory, or regulatory provision. *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 717 (Tenn.1997); *Chism v. Mid–South Milling Co.*, 762 S.W.2d 552, 556 (Tenn. 1988). To prevail on a claim of common law retaliatory discharge, an employee must prove (1) that an at-will employment relationship existed between the employee and the employer, (2) that the employee was discharged, (3) that the employee was discharged for attempting to exercise a statutory or constitutional right, or for any other reason that violates a clear public policy, and (4) that such action was a substantial factor in the employer's decision to discharge the employee. *See Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d at 535; *see also Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558 (Tenn.1993).

■ In addition to a common-law action for retaliatory discharge, the Tennessee General Assembly has adopted a statutory cause of action under the Tennessee Public Protection Act, commonly called the "Whistleblower Act." Tenn.Code Ann. § 50–1–304(a) provides that no employee shall be discharged solely for refusing to participate in or to remain silent about illegal activities. "Illegal activities" include state and federal criminal and civil violations, as well as violation of any regulation affecting public health, safety, and welfare. Tenn.Code Ann. § 50–1–304(c). Therefore, the primary difference between the common law and statutory claims is that, to benefit from statutory protection, an employee must demonstrate that his or her refusal was the *sole* reason for his or her discharge. Tenn.Code Ann. § 50–1–304(a); *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d at 535–37.

■ The common-law and statutory protection afforded to whistleblowers stems from the principle that an employee should not be placed in the dilemma of being forced to choose between reporting or participating in illegal activities and keeping a job. *Franklin v. Swift Trans. Co., Inc.*, 210 S.W.3d 521, 530 (Tenn.Ct. App.2006). It is a recognition of the "power of a few courageous individuals to make a lasting contribution to improving our public and private institutions." *Winters v. Houston Chronicle Pub. Co.*, 795 S.W.2d 723, 733 (Tex.1990) (J. Doggett, concurring).

Persons asserting either a statutory or common-law whistleblowing claim must prove more than that their employer violated a law or regulation. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d at 538; *Franklin v. Swift Transp. Co., Inc.*, 210 S.W.3d at 531. They must prove that their efforts to bring to light an illegal or unsafe practice furthered an important public policy interest, *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d at 538 n. 4; *Franklin v. Swift Transp. Co., Inc.*, 210 S.W.3d at 531, rather than simply their personal interest. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d at 538 n. 4. While they need not report the suspected illegal activities directly to law or regulatory enforcement officials, they must make a report to some entity other than the person or persons who are engaging in the allegedly illegal activities. *Emerson v. Oak Ridge Research, Inc.*, 187 S.W.3d 364, 371 (Tenn.Ct. App.2005); *Merryman v. Central Parking System, Inc.*, No. 01A01–9203–CH–00076, 1992 WL 330404, at *7 (Tenn.Ct.App. November. 13, 1992), *overruled on other grounds by Anderson v. Standard Register Co.*, 857 S.W.2d 555 (Tenn. June 28, 1993), *as recognized in Hill v. Perrigo of Tennessee*, No. M2000–02452–COA–R3–CV, 2001 WL 694479, at *5 (Tenn.Ct.App. June 21, 2001).

Generally, a claim of retaliatory discharge presents the employee with the challenge of proving the employer's motivation for the firing. *Emerson v. Oak Ridge Research, Inc.*, 187 S.W.3d at 370. In these cases, direct evidence of the employer's motivation will rarely be within the employee's possession. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d at 534; *Mason v. Seaton*, 942 S.W.2d 470, 474 (Tenn.1997). It thus falls to the reviewing court to determine whether the employee has of-

fered admissible evidence demonstrating circumstances under which a reasonable person could infer a retaliatory motive for the discharge. *Mason v. Seaton*, 942 S.W.2d at 473. The employee must prove a causal relationship between the employee's whistleblowing activity and the termination of employment. *See Anderson v. Standard Register Co.*, 857 S.W.2d at 558–59. If the plaintiff is successful in doing so, the burden then shifts to the employer who must show a legitimate, non-pretextual reason for the employee's discharge. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d at 534.

## B.

There are no genuine disputes of material fact in this case. All parties agree that Ms. Collins and Ms. Armstrong engaged in a heated argument on July 7, 2004. Ms. Collins herself testified that she believed that her employment was terminated because AmSouth decided that she had acted in a threatening manner toward Ms. Armstrong during the argument. However, she insists that the decision of the AmSouth officials to believe Ms. Armstrong rather than her provides a factual basis for a retaliatory discharge claim. Ms. Collins is mistaken. Neither the statutory nor the common-law whistleblowing claims are triggered by simple disputes or arguments between employees and their supervisors regarding workplace procedures.

We have considered the evidence in the light most favorable to Ms. Collins. She has failed to demonstrate that Ms. Armstrong's request that the cash for the substitute teller be placed in the night deposit drop box or her practice of opening the vault herself [3] was illegal or that it violated

---

**3.** Ms. Collins stated in her deposition that Ms. Armstrong was not the only person who

opened the vault by herself. Ms. Collins admitted that she had opened the vault herself

bank policy.[4] In addition, Ms. Collins failed to present any proof that she reported or attempted to report Ms. Armstrong's request to other bank officials or regulators. To the contrary, she admitted that she made no attempt to report Ms. Armstrong to Mr. Roberts, to law enforcement officials, or even to AmSouth through the toll-free number provided to all employees specifically for the purpose of reporting illegal activities at work. Without any evidence regarding these two essential ingredients of a retaliatory discharge claim, Ms. Collins's statutory and common-law whistleblowing claims must fail. Accordingly, the trial court correctly granted AmSouth's motion for summary judgment on that ground.[5]

## IV.

The summary judgment is affirmed, and the case is remanded to the trial court for whatever further proceedings consistent with this opinion may be required. The costs of this appeal are taxed to Andrea Collins and her surety for which execution, if necessary, may issue.

and that other bank employees had done the same.

4. Ms. Collins's citations to 12 U.S.C.A. § 1882 (West 2001) and 12 C.F.R. § 326.0 (2006) provide no legal basis for concluding that Ms. Armstrong has requested her to engage in an illegal activity. In addition, Mr. Roberts testified without contradiction that the night deposit drop box was a safe and that placing a cash drawer or supply of cash in the night deposit drop box would not have violated AmSouth policy.

5. Because we have determined that the undisputed facts undermine Ms. Collins's ability to make out a prima facie retaliatory discharge claim, we need not address whether AmSouth established as a matter of law that it had a legitimate, non-pretextual reason for terminating Ms. Collin's employment. However, had we addressed the issue, we would have concurred with the trial court's determination that the undisputed evidence established that Ms. Collins's employment was terminated for no reason other than her threatening behavior toward Ms. Armstrong.