IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 7, 2008 Session

# TONYA GAGER v. RIVER PARK HOSPITAL AND SOUTHEASTERN EMERGENCY SERVICES, P.C.

Appeal from the Circuit Court for Warren County
No. 2694    Larry B. Stanley, Jr., Judge

No. M2007-02470-COA-R3-CV - Filed January 14, 2009

Plaintiff, a nurse practitioner formerly employed by a staffing service and supplied to hospital emergency department, sued the service and the hospital for retaliatory discharge, gender discrimination, breach of contract and violation of the Tennessee Public Protection Act. Trial court granted summary judgment to staffing company. Finding no error, we affirm the judgment of the Circuit Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., and ANDY D. BENNETT, JJ., joined.

James L. Harris, Nashville, Tennessee, for the appellant, Tonya Gager.

W. Dale Amburn, Margaret G. Klein, and Jennifer Pearson Taylor, Knoxville, Tennessee, for the appellee, Southeastern Emergency Services, P.C.

## OPINION

Plaintiff, Tonya Gager, was employed by Southeastern Emergency Services, P.C., ("SES") as a nurse practitioner effective January 1, 2006, and assigned to the emergency department of River Park Hospital, McMinnville, Tennessee ("River Park"). The terms and conditions of Ms. Gager's employment were memorialized and contained in an Employment Agreement which included a provision that allowed Ms. Gager's termination "for cause . . . if a Facility requests that Gager not be scheduled to work at the Facility." She was terminated from her employment on February 22, 2007, following a request from River Park that she no longer be assigned to the hospital.

Ms. Gager sued SES for wrongful termination, breach of contract, gender discrimination and discrimination based upon the Tennessee whistle blower statute, Tenn. Code Ann. § 50-1-304; she sued River Park for procuring SES' breach of the Agreement in violation of Tenn. Code Ann. § 47-

50-109. Ms. Gager alleged in her complaint that her employment was terminated as a result of her "refusal to remain silent" about an "illegal and ill-advised policy" implemented by River Park. SES filed a motion for summary judgment, to which Ms. Gager filed two affidavits in opposition. The trial court granted SES' motion, finding "no disputed issues of material fact that would allow Plaintiff to go forward." The court made its order final in accordance with Rule 54, Tenn. R. Civ. P., and Plaintiff filed the instant appeal. The case against River Park remains pending in the trial court.

Ms. Gager articulates the issue before this court as follows:

> Did not the trial judge err in invading the province of the jury by resolving matters of witness credibility, intent, motive, and perception within the context of a motion for summary judgment?

## I. Standard of Review

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Draper v. Westerfield*, 181 S.W.3d 283, 288 (Tenn. 2005); *BellSouth Advertising & Publishing Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003); *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 284 (Tenn. 2001); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). We review the summary judgment decision as a question of law. *Finister v. Humboldt Gen. Hosp., Inc.*, 970 S.W.2d 435, 437 (Tenn.1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn.1997). Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004); *Staples v. CBL & Assoc.*, 15 S.W.3d 83, 88 (Tenn. 2000).

The requirements for the grant of summary judgment are that the filings supporting the motion show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004); *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). Consequently, summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion - that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Draper v. Westerfield*, 181 S.W.3d 283, 288 (Tenn. 2005); *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001); *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001); *Staples v. CBL & Assoc.*, 15 S.W.3d 83, 88 (Tenn. 2000).

In our review, we must consider the evidence presented at the summary judgment stage in the light most favorable to the non-moving party, and we must afford that party all reasonable inferences. *Draper*, 181 S.W.3d at 288; *Doe v. HCA Health Servs., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001). We must determine first whether factual disputes exist and, if so, whether the disputed fact is material to the claim or defense

upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd*, 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998). "If there is a dispute as to any material fact or any doubt as to the conclusions to be drawn from that fact, the motion must be denied." *Byrd*, 847 S.W.2d at 211.

## II. Discussion

In its order granting summary judgment, the trial court discussed each cause of action asserted by Ms. Gager and ruled that she had failed to come forward with any proof with respect to any of her claims; in so doing, the court considered SES' motion, the "affidavits and exhibits attached thereto, the statement of undisputed facts, Plaintiff's memorandum in opposition to summary judgment, affidavit of Plaintiff, and response to the statement of undisputed facts." Ms. Gager does not contend in this appeal that the trial court considered impermissible material or failed to consider other information of record; rather, her primary contention is that:

> . . . the respective parties' views of what did and did not occur are diametrically opposed. Someone is right and someone is wrong. Determining which "someone" is which simply cannot be done in a Rule 56 paradigm.

Our summary judgment analysis has been clarified in two recent opinions by the Tennessee Supreme Court. *See Martin v. Norfolk Southern Railway Co.*, No. E2006-01021-SC-R11-CV, 2008 WL 4890252, ___ S.W.3d ___ (Tenn. Nov. 14, 2008); *Hannan v. Alltel Publ'g Co.*, No. E2006-01353-SC-R11-CV, 2008 WL 4755788, ___ S.W.3d ___ (Tenn. Oct. 31, 2008). The summary judgment analysis to be used is as follows:

> The moving party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *accord Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). Accordingly, a properly supported motion for summary judgment must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). If the moving party fails to make this showing, then "the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered and the motion for summary judgment fails." *McCarley*, 960 S.W.2d at 588; *accord Staples*, 15 S.W.3d at 88.

> The moving party may make the required showing and therefore shift the burden of production to the nonmoving party by either: (1) affirmatively negating an essential

element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan v. Alltel Publ'g Co.*, ___ S.W.3d ___, ___ (Tenn. 2008); *see also McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215 n.5. Both methods require something more than an assertion that the nonmoving party has no evidence. *Byrd*, 847 S.W.2d at 215. Similarly, the presentation of evidence that raises doubts about the nonmoving party's ability to prove his or her claim is also insufficient. *McCarley*, 960 S.W.2d at 588. The moving party must either produce evidence or refer to evidence previously submitted by the nonmoving party that negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan*, ___ S.W.3d at ___. We have held that to negate an essential element of the claim, the moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party. *See Blair v. W. Town Mall*, 130 S.W.3d 761, 768 (Tenn. 2004). If the moving party is unable to make the required showing, then its motion for summary judgment will fail. *Byrd*, 847 S.W.2d at 215.

If the moving party makes a properly supported motion, then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist. *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215. The nonmoving party may satisfy its burden of production by:

> (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06.

*McCarley*, 960 S.W.2d at 588; *accord Byrd*, 847 S.W.2d at 215 n.6. The nonmoving party's evidence must be accepted as true, and any doubts concerning the existence of a genuine issue of material fact shall be resolved in favor of the nonmoving party. *McCarley*, 960 S.W.2d at 588. "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. A disputed fact presents a genuine issue if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

*Martin*, 2008 WL 4890252, at *___, ___ S.W.3d at ___.

We apply this analytical framework to each claim asserted by Ms. Gager. Of particular importance to our consideration of this appeal is the following excerpt from Plaintiff's complaint which is the factual allegation upon which the causes of action asserted by Ms. Gager are based:

-4-

On January 2, 2007, River Park instituted certain written policies with regard to nurse practitioners in its Emergency Department that served not only to endanger the health of patients but also in contravention of Tennessee statutory, common and regulatory law and Tennessee's explicit public policy. Plaintiff refused to remain silent about this illegal and ill-advised policy. Plaintiff called the matter to the attention of defendants, and each of them, but to no avail. Plaintiff was discharged effective February 22, 2007. This discharge was solely caused by plaintiff's refusal to remain silent about River Park's illegal activities as aforesaid.

## A. Wrongful termination and breach of contract

Inasmuch as many of Ms. Gager's claims, as well as SES' defenses, are premised on the enforceability of the Employment Agreement, our analysis begins with a discussion of it.[1] The trial court found "no reason that the contract itself is invalid." Ms. Gager asserts that her employment contract was a contract of adhesion and, therefore, unenforceable. In support of this contention she contends that she had no bargaining power and that the contract was "purely 'take it or leave it';" she asserts that the determination that the Agreement was valid "necessarily requires more in the way of proof than [the trial judge] had before him."

An adhesion contract has been defined as "a standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract." *Buraczynski v. Eyring,* 919 S.W.2d 314, 320 (Tenn. 1996) (*citing* Black's Law Dictionary 40 (6th Ed. 1990)). Not all adhesion contracts are unenforceable; enforceability "depends upon whether the terms of the contract are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable." *Id.* (*citing Broemer v. Abortion Services of Phoenix Ltd.,* 840 P.2d 1013 (1992)). An adhesion contract which is oppressive to the weaker party or which limits the obligations and liability of the stronger party will not be enforced. *Id.*; *see also Wallace v. National Bank of Commerce,* 938 S.W.2d 684 (Tenn. 1996). In the employment context, in determining whether a contract is one of adhesion, the court adapts these standards and applies them to the particular facts of the case. *See, e.g, Cooper v. MRM Investment Co.*, 367 F.3d 493 (6th Cir. 2004).

Ms. Gager's affidavit, filed in response to the motion for summary judgment, recites the following:

At the time I signed the Employment Agreement that is Exhibit 1 to defendant Southeastern Emergency Services, PC's motion to dismiss, I was given no opportunity

---

[1] Summary judgment was not sought specifically on the issue of the validity and/or enforceability of the Employment Agreement. However, in addressing the grant of summary judgment on Ms. Gager's various causes of action, it is necessary for us to address the validity of the Employment Agreement, since the employment relationship was defined by the agreement.

whatsoever to negotiate, or bargain about, its terms. At the time I signed the Employment Agreement, I was already in the employ of Southeastern Emergency Services, PC's predecessor in interest, Sterling Healthcare, and working at River Park Hospital. The Employment Agreement was presented to me in a form that had been prepared by Southeastern Emergency Services, PC. The only bargaining power that I had was my ability not to accept the job and this was a job that I both wanted and needed. It was made clear to me by Southeastern Emergency Services, PC that my choice was to sign the Employment Agreement and get the job, or not sign the Employment Agreement and not get the job.

Ms. Gager's affidavit establishes only that the agreement was prepared by SES and was presented to her in a "take it or leave it" fashion. As the case law demonstrates, these are facts that support a finding that the agreement is adhesive; there still must be a showing that it is unduly oppressive or unconscionable to be unenforceable. *Wallace, supra.; see also Wilson Pharmacy, Inc. v. General Computer Corporation,* 2000 WL 1421561 (Tenn. Ct. App. Sept. 21, 2000). She has failed to present any such facts[2] or identify the proof she contends was "necessarily require[d]" in order for the court to sustain its validity.

We have reviewed the Employment Agreement and do not find a basis upon which to conclude that it is unduly oppressive or unconscionable. Ms. Gager, a licensed nurse, was engaged as a nurse practitioner and assigned to River Park Hospital. As she attests in her affidavit, this was a job she "both wanted and needed." She was engaged to work an average of 156 hours per month at a salary of $105,768 per year, plus quarterly bonuses (at the discretion of SES), malpractice insurance, and benefits which were available to the other full-time employees of SES. She does not contend that she was coerced into signing the agreement, that there were no comparable positions available with another employer, that any of the terms were beyond her expectations; neither, as aforesaid, does she present any other facts upon which to base a conclusion that the agreement is oppressive or unconscionable. The trial court did not err in holding the Employment Agreement to be valid.

The Employment Agreement provided that it could be terminated by SES immediately for cause for several reasons, including "if a Facility requests that Gager not be scheduled to work at the Facility."[3] The affidavit of Monty Scott, Vice President of SES, detailed that SES' primary business was placing nurse practitioners and physician assistants at facilities which had contracts with Southeastern Emergency Physicians, Inc. (SEP); that SEP's agreement with River Park allowed River Park to require removal of practitioners for cause on five days notice; that River Park made such a request; and that the termination of Ms. Gager's Employment Agreement was done in accordance with River Park's request. Ms. Gager acknowledges that the Employment Agreement allowed her

---

[2] For instance, the record does not show what effort Ms. Gager may have made to negotiate any of the terms and conditions of the Employment Agreement, *i.e.*, to exercise "a realistic opportunity to bargain." *Buracsynski,* 919 S.W.2d at 320.

[3] The Employment Agreement could also be terminated bilaterally without cause on ninety days notice.

to be terminated if a facility requested she no longer be assigned there. This proof was sufficient to negate an essential element of Ms. Gager's claim, to wit, that her termination was contrary to the Employment Agreement, thereby shifting the burden to Ms.Gager to point to evidence establishing material factual disputes that were overlooked or ignored by SES, produce additional evidence establishing the existence of a genuine issue for trial, or submit an affidavit explaining the necessity for further discovery. *See Martin,* No. E2006-01021-SC-R11-CV, 2008 WL 4890252 at *___, ___ S.W.3d at ___ (*citing McCarley,* 906 S.W.2d at 588; *accord Byrd*, 847 S.W.2d at 215 n. 6).

In response to the motion and supporting material, Ms. Gager's affidavit recites: "I was not terminated because of Southeastern Emergency Services['] exercise of their option, 6.2 of the employment agreement between me and SES. I was terminated solely because of my refusal to remain silent about River Park's illegal activities."

Rule 56.06, Tenn. R. Civ. P. provides in pertinent part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence . . . When a motion for summary judgment is made and supported . . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but his or her response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party fails to do so, summary judgment, if appropriate, shall be entered against he adverse party.

The response of Ms. Gager is a conclusory allegation that does not respond to the factual assertions of Mr. Scott that SES' termination of the Employment Agreement was initiated at the request of River Park and in accordance with the applicable provision of the agreement; her affidavit is insufficient to create a genuine issue of material fact, as respects SES, as to the reason for the termination of the agreement. Summary judgment to SES on the wrongful termination and breach of contract claims of Ms. Gager was proper.

B. Retaliatory discharge

Ms. Gager complains that the trial court "managed to overlook" her common-law retaliatory discharge claim. The order of the trial court stated:

> The Plaintiff has come forward with no proof other than her conclusion that she was fired because of her failure to implement policies issued by River Park hospital and to stay silent as to such policies which she considered to endanger the patients and were in contravention of state statutory, common and regulatory law, and against public policy.

While not specifically identified as the court's ruling on her retaliatory discharge claim, it is clear that the quoted language addresses same and that the claim was not overlooked by the trial court.

The common law cause of action for retaliatory discharge developed as an exception to the at-will employment doctrine and restricts the right of an employer to terminate an employee "when the employee is terminated in contravention of well-defined and established public policy." *Guy v. Mutual of Omaha Ins. Co.,* 79 S.W.3d 528, 535 (Tenn. 2002) (*citing Chism v. Mid-South Milling Co.,* 762 S.W.2d 552, 555 (Tenn. 1998)). The elements of such a retaliatory discharge claim are (1) an at-will employment relationship;[4] (2) the discharge of the employee; (3) that the employee was discharged for attempting to exercise a constitutional or statutory right or for a reason that violates a clear public policy; and (4) that the employee's action was a substantial factor in the decision to discharge the employee. *Collins v. AmSouth Bank,* 241 S.W.3d 879, 884 (Tenn. Ct. App. 2007).

In support of her contention that a claim for common law retaliatory discharge exists, Ms. Gager asserts that her second affidavit, "standing alone, creates genuine issues of material fact insofar as common law retaliation is concerned."[5] Although she does not identify what portions of the affidavit she contends creates issues of fact, our review of the affidavit reveals the following portions which relate to a retaliatory discharge claim:

> 3. On January 2, 2007, River Park instituted certain written policies with regard to nurse practitioners in its Emergency Department that served not only to endanger the health of patients but also were in contravention of Tennessee statutory, common and regulatory law and Tennessee's explicit public policy. I called the matter to the attention of defendants but to no avail. I was discharged effective February 22, 2007. This discharge was solely caused by my refusal to remain silent about River Park's illegal activities.
> 4. It was mandated in a letter that we shouldn't, under any circumstances, call the admitting physicians about patients. This created a danger to patient care in that it put me in a position to rely strictly on the availability of the ER physician to make those

---

[4]The common law employment-at-will doctrine provides that "an employment contract for an indefinite term is terminable at the will of either the employee or the employer for any cause or for no cause." *Guy, supra*. at 534-35. On appeal, SES contends that Ms. Gager was not an at-will employee and, consequently, she cannot establish the first element of a common law retaliatory discharge case. The trial court did not specifically address the question whether, since there was a contract of employment entered into between the parties, Ms. Gager was an at-will employee.

Ms. Gager's employment with SES was pursuant to the Employment Agreement for an initial term of one year; the agreement was renewable for successive one year terms. In addition to termination by expiration of time, the agreement could be terminated immediately for cause, *e.g.,* if a facility to which Ms. Gager was assigned requested she no longer be scheduled to work at that facility. Her salary, hours, licensing requirements and other terms and conditions of employment were detailed in the agreement. The only provision of the Employment Agreement that could be characterized as supporting a finding that Ms. Gager was an at-will employee is the provision providing for termination by either party without cause on ninety days' written notice. Ms. Gager's termination was for cause as specified in the Employment Agreement; consequently, under these facts, Ms. Gager's was not an at-will employee for purposes of asserting a claim for common law retaliatory discharge. Notwithstanding our holding in this regard, we are proceeding to review the trial court's analysis of Ms. Gager's common law retaliatory discharge claim.

[5] Our consideration of the factual basis for a common law retaliatory discharge claim is also applicable, in part, to Ms. Gager's statutory retaliation claim.

phone calls on patients that they had not seen. This created a time gap between the patient care in the emergency room and the admission of the patient. I was not given the authority to call the admitting physician about their patient or potential patient.

The affidavit of Monty Scott, Vice President of SES, filed in support of the motion for summary judgment, attests that the termination of Ms. Gager's Employment Agreement was initiated by a request from River Park that she no longer be assigned to that facility and that it was carried out in accordance with the terms of the Employment Agreement. As noted previously, a claim of retaliatory discharge includes proof that the employee was discharged for attempting to exercise a constitutional or statutory right or for a reason that violates a clear public policy, and that the employee's action was a substantial factor in the decision to discharge the employee. Mr. Scott's affidavit negates Ms. Gager's contention that her termination was for "refusing to remain silent" about an "illegal and ill-advised policy" of River Park, thereby requiring her to produce "evidence of specific facts establishing that genuine issues of material fact exist." *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998).

Ms. Gager has failed to identify the law and policy that she contends was contravened by the mandate in the letter or what activities of River Park were illegal; the quoted provisions from her affidavit reveal only a policy implemented by River Park with which Ms. Gager disagreed. The fact that there may be a dispute between an employee and the employer regarding workplace procedures does not, in and of itself, trigger a common law retaliatory discharge claim. *Collins, supra.* In addition, although Ms. Gager states in conclusory fashion that she "called the matter to the attention of defendants," she fails to identify the content, nature and manner of any such contact, the person(s) to whom such contact was made, or provide any factual information tending to show that her action was a factor in SES' decision to terminate the Employment Agreement. In a retaliatory discharge case, it is incumbent upon the employee to offer admissible evidence showing a causal relationship between the employee's activity and the termination of employment. *Collins, supra.* This she has failed to do and the trial court did not err in dismissing her common law retaliatory discharge claim.

B. Statutory Retaliation

In regards to Ms. Gager's claim that she was terminated in violation of the Tennessee Whistleblower Statute, Tenn. Code Ann. § 50-1-304, the trial court held:

[T]he Plaintiff has come forward with no proof that the Defendant, Southeastern Emergency Services, P.C., retaliated against the Plaintiff for failure to follow "illegal and ill-advised" rules and regulations set forth by River Park. The only proof in the record regarding this claim is that the Plaintiff claims that she "refused to remain silent" about the policy and "called the matter to the attention of the defendants." Giving the Plaintiff the benefit of the doubt, as we must in motions for summary judgment, she does allege termination because of her refusal to remain silent regarding activities which are illegal or against public policy. However, such allegations must be substantiated to some degree. Not only is there no evidence regarding the policies by River Park as being illegal or against public policy, there is no proof that this was

-9-

why River Park requested that she not be assigned to that facility or that Southeastern Emergency Services, P.C. was complicit in River Park's activities. Without more than mere assertions by Plaintiff, the claim must fail.

We agree with the rationale and holding of the trial court. As in the case of the common law retaliatory claim, it is incumbent upon Ms. Gager to come forward with "admissible evidence demonstrating circumstances under which a reasonable person could infer a retaliatory motive for the discharge [and] a causal relationship between [her] whistle blowing activity and the termination of employment." *Collins,* 241 S.W.3d at 885 (internal citations omitted). The primary difference between a common law retaliatory discharge claim and one based on the statute is that Tenn. Code Ann. § 50-1-304(b) requires that the termination be "solely" for refusing to participate in or remain silent about illegal activities. *Collins, supra.* Consequently, inability to sustain a common law retaliatory discharge claim, which includes a lower standard of proof, i.e., that the employee's activities only be a substantial factor in the decision to terminate, necessarily dooms a statutory retaliatory discharge case. For the same reasons that Ms. Gager's proof fails to establish a common law retaliatory discharge claim, it fails to establish a statutory retaliatory discharge claim.

C. Gender Discrimination

Ms. Gager asserts that the trial court acted prematurely with respect to the dismissal of her claim that she was discriminated against because of her sex in violation of Tenn. Code Ann. § 4-21-401, as no discovery had been conducted by her. In her brief filed in this court, she states that she "made the Circuit Judge aware of this in her Memorandum in Opposition to Southeastern's Motion for Summary Judgment, but to no avail."

The affidavit of Mr. Scott set forth a legitimate non-discriminatory reason for Ms. Gager's termination, i.e., that she was terminated because River Park asked that she no longer be assigned to the facility. Having articulated such reason, it became incumbent upon Ms. Gager to come forward with evidence showing that SES' proffered reason was a pretext for unlawful discrimination. *See Newsom v. Textron Aerostructures,* 924 S.W.2d 87, 96 (Tenn. Ct. App. 1995)(setting forth the order and allocation of proof procedure in action under Tenn Code Ann. § 4-21-101).

As set forth in *Martin v. Norfolk Southern Railway Co.*, *supra,* if the moving party makes a properly supported motion, the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist. *See also McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215. The nonmoving party may satisfy its burden of production by:

> (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06.

-10-

The fact that Ms. Gager "made the Circuit Judge aware" that no discovery had been taken by her does not satisfy the requirement that she submit an affidavit explaining why further discovery is necessary. The Complaint in this case was filed on March 20, 2007; SES' answer was filed, along with the motion for summary judgment, on August 8, 2007.[6] The motion was heard on October 9, 2007. Absent the showing required by Rule 56.06 and, as applicable Rule 56.07, Tenn. R. Civ. P., we are not inclined to hold the trial court in error for proceeding to consider the motion on the record before it at the time of the hearing. As held in *In Re Estate of Phillips,* 2004 WL 2086331 (Tenn. Ct. App. Sept. 20, 2004):

> The opponent of a motion for summary judgment possesses no absolute right to additional time for discovery, and if there has been a reasonable opportunity for discovery, the party is obliged to make an affirmative showing that there is some evidence not presently before the court and why more time and additional discovery is needed.

2004 WL 2086331 at *2.

We concur with the trial court's conclusion that there is nothing in the record from which it could be inferred or shown that SES discriminated against Ms. Gager on the basis of her sex.

D. Lack of Discovery by Ms. Gager

The trial court addressed Ms. Gager's contention that the lack of discovery was grounds to overrule the motion for summary judgment as follows:

> In this case there is no specific indication of what type of discovery is lacking or what would likely be shown if more time were allowed. There are no specific statements attributed to witnesses who have been unable to be deposed or interviewed, there are no experts who have indicated that the policies implemented by River Park are improper, and there are no tangible documents alluded to which would confirm any of the allegations made by the Plaintiff. This Court is of the opinion that leeway may and should be given to all parties regarding discovery and their preparation of the record for summary judgment matters. However, when no evidence is proffered or alleged to be forthcoming a court must proceed on the evidence before it. . . .

The record does not show any motion filed by Ms. Gager to continue the hearing on the motion for summary judgment or, as aforesaid, any affidavit filed to support a contention that further discovery was necessary. As was the case in *In Re Estate of Phillips*, *supra,* Ms. Gager has offered "no explanation of why the proper motion for continuance and supporting affidavits were not brought before the Court as required under the Rules of Civil Procedure, and offers us no justification for the

---

[6] In the interim, there was an agreed order entered May 4, 2007, substituting SES as a defendant, as well as proceedings relative to SES' motion to dismiss the case for improper venue. In addition, River Park filed its answer on April 23, 2007 and amended its answer on July 9.

failure to otherwise diligently pursue discovery." 2004 WL 2086331 at *3. As set forth above, we decline to hold that the trial court erred in hearing the motion.

**III.    Conclusion**

For the foregoing reasons, the judgment of the trial court granting summary judgment to Southeastern Emergency Services, P.C., and dismissing this case is affirmed. The case is remanded to the Circuit Court for Warren County for the collection of costs accrued therein.

Costs of this appeal are assessed to Tonya Gager and her surety.


                                                  RICHARD H. DINKINS, JUDGE