# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
July 11, 2008 Session

## IRENE McCRAY v. THE VANDERBILT UNIVERSITY D/B/A VANDERBILT UNIVERSITY MEDICAL CENTER

Appeal from the Circuit Court for Davidson County
No. 06C-2134     Barbara Haynes, Judge

No. M2008-00364-COA-R3-CV - Filed June 23, 2009

Plaintiff, a patient care partner formerly employed by a hospital, brought suit against the hospital after her termination, alleging violations of the Tennessee Handicap Act, the Americans with Disabilities Act, the Tennessee Human Rights Act, the Family and Medical Leave Act and retaliatory discharge. The hospital filed a motion for summary judgment, which the trial court granted. Finding that the plaintiff did not create a genuine issue of material fact on essential elements of her claim of retaliatory discharge, we affirm the decision of the trial court.

**Tenn. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., and ANDY D. BENNETT, JJ, joined.

James L. Harris, Nashville, Tennessee, for the appellant, Irene McCray.

William N. Ozier, Alonda W. McCutcheon, and Leona Marx, Nashville, Tennessee, for the appellee, Vanderbilt University, d/b/a Vanderbilt University Medical Center.

## OPINION

Irene McCray was previously employed by Vanderbilt University Medical Center ("VUMC") as a patient care partner in the Dialysis Unit; she was initially employed on October 18, 2004. Her mother, who resided in Michigan, became ill and on December 15, 2005, Ms. McCray requested and was granted leave pursuant to the provisions of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601. As part of the procedure for granting her leave, VUMC requested that Ms. McCray have her mother's physician sign and complete a medical certification form and that she return the form to VUMC. Ms. McCray's last day of work was December 21 and her last scheduled day of medical leave was January 8, 2006.

On January 8, Ms. McCray learned that her mother's condition had worsened. She attempted to contact her supervisor, Richard Phidd, but could not reach him; she left a message for him to return her call. Mr. Phidd returned the call on January 9, and in the course of the conversation,

informed Ms. McCray that the medical certification form had not been received by VUMC. Ms. McCray returned to work at 5:30 a.m. on January 11, and on that date she sent another medical certification form to her mother's physician. This form was completed and signed by her mother's physician and received by VUMC on January 20. Ms. McCray's mother died on January 18, after which Ms. McCray was on medical leave until January 26.

On March 16, Mr. Phidd issued Ms. McCray a Final Performance Improvement Counseling ("FPIC") form, advising that performance deficiencies of hers on December 16, 19, 20 and 21, 2005, had compromised patient safety and requiring, under penalty of further action, that she document the completion of her tasks accurately. Ms. McCray filed a grievance with VUMC's Opportunity Development Center ("ODC") in response to the FPIC; in the grievance, she asserted that she had been "harassed and disciplined for erroneous reasons because I took FMLA leave to visit my dying mother." On April 6, Ms. Carol Eck, Department Head, sent Ms. McCray a letter advising her that Ms. Eck had investigated the matter and determined that Ms. McCray had, in fact falsely documented the records at issue; however, Ms. Eck recommended that the FPIC be reduced to a Written Reminder, which would be in effect for 90 days.

On April 13, an evaluation of Ms. McCray's work performance was performed by Mr. Phidd. On April 17, Ms. McCray filed another grievance, alleging that she was discriminated against and retaliated against and explaining:

> Richard Phidd, my supervisor, has known that I suffer from AD/HD, and has knowingly aggravated my condition by emotionally abusing me and putting unnecessary restrictions on my behavior. Further, he has retaliated against me for bringing an FMLA grievance with the ODC by giving me a very weak evaluation and further abusing me emotionally.

On May 8, Peter Martino, an ODC compliance representative, informed Ms. McCray by letter that ODC had investigated the matter and determined that Mr. Phidd had acted "inappropriately" towards her. The letter further advised that the issue "is being addressed in a manner consistent with Vanderbilt's practices and policies" and that if she continued to "experience concerns over retaliation or discrimination" to contact him immediately.

Ms. McCray received a FPIC on June 1, pointing out several areas of concern regarding her performance and setting out corrective action to be taken. On June 6, Ms. McCray filed a grievance, alleging that she was the victim of disability discrimination and retaliation with reference to the June 1 FPIC and explaining as follows:

> Richard Phidd issued me a Final PIC for false reasons and for mistakes that were minor and have been made by other employees who did not receive discipline. I feel that this was in retaliation to my recent grievance filed against him with ODC or his misunderstanding of my abilities as a person with AD/HD.

On July 6, Mr. Martino sent Ms. McCray a letter advising her that ODC had investigated the grievance and there was "not sufficient evidence to find a violation of the University's Equal

Opportunity and Affirmative Action policy . . . [and] there is not sufficient evidence to find a violation of Vanderbilt's anti-retaliation policy."

On July 20, Ms. McCray accidentally flooded a patient's room with bleach water while cleaning a bi-carb machine. On July 25, Ms. McCray's employment was terminated based on continued performance issues within six months of receiving Final Performance Improvement Counseling.[1]

Shortly thereafter, Ms. McCray filed suit against VUMC, alleging that she was terminated due to "unlawful discrimination predicated on her age and/or her disability, and in unlawful retaliation for Plaintiff's successfully having complained about her supervisor." Ms. McCray claimed that VUMC's actions were in violation of the Tennessee Handicap Act ("THA"), the Americans with Disabilities Act ("ADA") and the Tennessee Human Rights Act ("THRA"); VUMC filed a timely answer. By agreed order, the complaint was amended to add a claim under the Family and Medical Leave Act ("FMLA"); VUMC's answer was accordingly amended.

Following discovery, VUMC filed a motion for summary judgment, supported by a memorandum, statement of undisputed facts, excerpts and exhibits from the depositions of Ms. McCray, Mr. Phidd, Ms. Eck and Dan Majors, a nurse trainer, and the affidavits of Richard Phidd, Todd Griner and Vicki Richard. The motion asserted that Ms. McCray's ADA claim was barred for failure to exhaust administrative remedies; that she could not establish a *prima facie* case of age discrimination or retaliation; and that she could not prove that VUMC interfered with her rights under the FMLA.

In response to the motion, Ms. McCray filed a memorandum in opposition to motion for summary judgment and a reply to the statement of undisputed facts. In her memorandum, Ms. McCray conceded that VUMC was entitled to summary dismissal of the age and disability discrimination claims; she stated that "this is, purely and simply, an FMLA case with a significant retaliatory discharge component."[2]

The trial court granted VUMC's motion for summary judgment. In addition to acknowledging Ms. McCray's concession that summary judgment was appropriate as to the asserted disability and age discrimination claims, the court held that Ms. McCray failed to state a claim of retaliation pursuant to the FMLA in light of her acknowledgment that she was, in fact, granted FMLA leave. With respect to Ms. McCray's claim of common law retaliatory discharge, the court held that Ms. McCray did not present proof that she engaged in a protected activity or show a causal connection between her internal complaints and eventual termination or to produce evidence showing that VUMC's reasons for her discharge were pretextual.

---

[1] VUMC's progressive discipline policy provides that an employee may be terminated for any performance issue within six months of being issued a FPIC. Ms. McCray was placed on FPIC on June 1.

[2] Ms. McCray reiterates this concession in her brief on appeal.

Ms. McCray articulates the issue before the court as follows:

Did not the Circuit Judge err in resolving matters of witness credibility, motive, intent, and perception in a Rule 56 context, and thereby impermissibly invade the province of the jury?

## I. Standard of Review

This appeal is from a grant of summary judgment. Summary judgment is appropriate where a party establishes that there is no genuine issue as to any material fact and that a judgment may be rendered as a matter of law. Tenn. R. Civ. P. 56.04; *Stovall v. Clark*, 113 S.W.3d 715, 721 (Tenn. 2003). Moreover, it is proper in virtually all civil cases that can be resolved on the basis of legal issues alone, *Byrd v. Hall*, 847 S.W.2d 208, 210; *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App. 2001); however, it is not appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. The party seeking a summary judgment bears the burden of demonstrating that no genuine disputes of material fact exist and that the party is entitled to judgment as a matter of law. *Godfrey v. Ruis*, 90 S.W.3d 692, 695 (Tenn. 2002). To be entitled to summary judgment, the moving party must affirmatively negate an essential element of the non-moving party's claim or show that the moving party cannot prove an essential element of the claim at trial. *Martin v. Norfolk Southern Railway Co.,* 271 S.W.3d 76, 83 (Tenn. 2008).

Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). This court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1977). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Stovall,* 113 S.W.3d at 721; *Godfrey,* 90 S.W.3d at 695. When reviewing the evidence, we first determine whether factual disputes exist. If a factual dispute exists, we then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd,* 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998).

The summary judgment analysis has been clarified in two recent opinions by the Tennessee Supreme Court. *See Martin*, 271 S.W.3d 76; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1 (Tenn. 2008). A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *accord Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). A properly supported motion for summary judgment must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). If the moving party makes a properly supported motion, then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist. *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215. The nonmoving party may satisfy its burden of production by:

(1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06.

*McCarley*, 960 S.W.2d at 588; *accord Byrd*, 847 S.W.2d at 215 n.6; *Martin* 271 S.W.3d at 83-84.

## II. Discussion

### A. FMLA Claims as Pled in the Complaint

29 U.S.C. § 2612(a)(1)(C) provides that an eligible employee is entitled to a total of 12 work weeks of leave during any 12 month period to "care for a spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter or parent has a serious health condition." Pursuant to 29 U.S.C. § 2614, an employee who takes medical leave is entitled to be restored to the position held by the employee prior to taking the leave and the taking of such leave "shall not result in the loss of any employment benefits accrued prior to the date on which the leave commenced." 29 U.S.C. § 2614(a)(2). 29 U.S.C. § 2615 prohibits an employer from interfering with the employee's exercise of rights under the FMLA and, further, prohibits the discharge or other manner of discrimination against "any individual for opposing a practice made unlawful by this subchapter." 29 U.S.C. § 2615 (a)(2).

In Paragraph 10 of the amended complaint, Ms. McCray alleges as follows:

10. Subsequent to the filing of the original complaint in this case, and during the discovery process, plaintiff has learned that she was entitled to certain rights and remedies guaranteed by the Family and Medical Leave Act, which is codified at 29 USC 29-2601 *et seq* [sic]. Plaintiff avers that those rights were violated by Vanderbilt in that Vanderbilt did not grant her medical leave as provided by law. These violations could not have been discovered by plaintiff absent the fact of litigation.

In support of its motion for summary judgment VUMC filed, *inter alia,* a statement of undisputed material facts, which included the following:

12. On December 20, 2005, Plaintiff requested and was granted medical leave under the Family and Medical Leave Act ("FMLA") from December 26, 2005 until January 8, 2006 to care for her sick mother.

Ms. McCray admitted the truth of this statement in her response.

Neither Ms. McCray's amended complaint nor the material filed in her response to the summary judgment motion creates a genuine issue of material fact regarding the allegations of paragraph 10 of her amended complaint. *McCarley*, 960 S.W.2d at 588. By her own admission, Ms.

-5-

McCray did, in fact, receive the benefit of medical leave that she sought from VUMC pursuant to the FMLA. Consequently, the trial court did not err in dismissing Ms. McCray's FMLA claims, as pled.

 B. Retaliation Claims

 We agree with the trial court that Ms. McCray did not specifically plead a violation of 29 U.S.C. § 2615 in her amended complaint. Her response to the motion, likewise, fails to make a specific claim that her termination violated the statute. However, the allegations of paragraph 10 of the amended complaint, specifically the words "Vanderbilt did not grant her medical leave as provided by law," could be broadly construed to make an allegation that her termination was in retaliation for taking FMLA leave or the manner in which her request (and grant) of leave was handled. Because, as more fully discussed below, the factual and legal elements of both a claim of retaliation under the FMLA and a claim of common law retaliation are substantially the same, we will discuss the retaliation claims together.

 The FMLA's prohibition against discrimination against an employee who has exercised rights under the FMLA includes "consideration of an employee's use of FMLA leave as a negative factor in an employment action." *Stallings v. Hussman Corp.,* 447 F.3d 1041, 1051 (8th Cir., 2006) (citing *Darby v. Branch,* 287 F.3d 673 (8th Cir., 2002)). A claim of retaliation under the FMLA is analyzed under the burden-shifting procedure set forth in *McDonnell -Douglas v. Green*, 411 U.S. 792 (1973), wherein upon the plaintiff's showing of a *prima facie* case of retaliation, the burden to articulate a legitimate, non-retaliatory reason for the employee's treatment falls upon the employer. When the employer satisfies its burden, the burden then shifts to the employee to demonstrate that the reason proferred by the employer is not the true reason for the treatment. This can be shown either by showing that the proferred reason is unworthy of credence or that a prohibited reason more likely than not motivated the employer. *See Texas Dep't. Of Comm. Affairs v. Burdine,* 450 U.S. 248 (1981).

 The common law cause of action for retaliatory discharge developed as an exception to the at-will employment doctrine and restricts the right of an employer to terminate an employee "when the employee is terminated in contravention of well-defined and established public policy." *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 535 (Tenn. 2002) (*citing Chism v. Mid-South Milling Co.,* 762 S.W.2d 552, 555 (Tenn. 1998)). The elements of such a retaliatory discharge claim are (1) an at-will employment relationship; (2) the discharge of the employee; (3) that the employee was discharged for attempting to exercise a constitutional or statutory right or for a reason that violates a clear public policy; and (4) that the employee's action was a substantial factor in the decision to discharge the employee. *Collins v. AmSouth Bank*, 241 S.W.3d 879, 884 (Tenn. Ct. App. 2007).

 With regard the common law retaliatory discharge claim, Ms. McCray argues that filing grievances is "definitionally and by statute" a protected activity. However, she fails to identify any such "definition" or statute by which the filing of a grievance under VUMC's personnel administration policies is a protected activity or the public policy implications attendant to the filing of such grievance. As noted by the trial court "an internal grievance procedure is not an activity that

is protected by a statutory or constitutional right, or any regulatory provision."[3] The statute cited by Ms. McCray in this regard, Tenn. Code Ann. § 4-20-301(1) [sic],[4] is not applicable to her common law retaliation claim inasmuch as that statute is part of the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101 *et seq.,* and is only applicable to alleged violations of that Act;[5] Ms. McCray's allegations of violation of the THRA were dismissed by the trial court, an action to which she agreed and does not contest. The trial court's holding that Ms. McCray "failed to offer any evidence that she engaged in protected activity," such as to invoke the retaliatory discharge exception to the employment-at-will doctrine is fully supported by the record.

Also with respect to the common law retaliation claim, the trial court held that, even if Ms. McCray had established a *prima facie* case of retaliation, she had "not produced evidence sufficient to raise an inference that VUMC's proffered reasons for discharging her lack credibility, or that the decision was likely motivated by a discriminatory or retaliatory reason."

In paragraphs 7 and 8 of her amended complaint, Ms. McCray states:

7. . . .The Director of Vanderbilt's Dialysis Unit, Plaintiff's supervisor, informed her that since she had not made a formal request for FMLA leave, she had to return the following day or her employment would be terminated. Plaintiff thereafter complained to Vanderbilt management, and her complaints were ultimately vindicated.

8. Vanderbilt discharged Plaintiff effective July 25, 2006. Vanderbilt's stated reasons for Plaintiff's discharge - performance problems, attendance problems, and difficulties operating dialysis equipment - were and are wholly pretextual. The true reasons for Vanderbilt's discharge of Plaintiff were unlawful discrimination predicated on her age and/or her disability, and in unlawful retaliation for Plaintiff's successfully having complained about her supervisor, as aforesaid.

Mr. Phidd's deposition, filed in support of VUMC's motion for summary judgment, attests that the termination of Ms. McCray's employment was due to a decline in her performance over a period of time and her refusal of help to improve her performance. As well, in his affidavit, Mr. Phidd attests to the following:

---

[3] "[T]he Tennessee Supreme Court has recognized a narrow exception to employment-at-will doctrine . . . prevents an employer from terminating the employment of an employee when doing so violates a clearly established public policy *which will usually be evidenced by an unambiguous constitutional, statutory or regulatory provision." Collins,* 241 S.W.3d at 884. (Emphasis added).

[4] The correct statute is Tenn. Code Ann. § 4-21-301(1).

[5] Tenn. Code Ann. § 4-21-301(1) provides that it is a discriminatory act to:

Retaliate or discriminate in any manner against a person because such person has opposed a practice declared discriminatory *by this chapter* or because such person has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing *under this chapter.* (Emphasis added).

6. On March 16, 2006, I issued Ms. McCray a Final Performance Improvement Counseling ("FPIC") for falsely documenting that she had disinfected a dialysis machine on four different occasions, when in fact, that machine was broken and placed in storage. I also issued a FPIC to Scott Plemons, a PCP [patient care partner], for engaging in the same conduct as Ms. McCray. I decided to issue both Ms. McCray and Mr. Plemons, a FPIC instead of a written PIC, because I believed their conduct compromised patient safety.

\*\*\*

10. The low scores Ms. McCray received in her evaluation were reflective of her deteriorating work performance. Specifically, Ms. McCray received a rating of "1" in the Key Functions categories of "Performs selected procedures and treatments" and "Maintains patient/family safety," making her overall key function score a 2.6. Her false documentation of records in December was the basis for her low scores in these categories on her evaluation.

\*\*\*

12. On June 1, 2006, I issued Ms. McCray a FPIC based on the variability of her work performance, the distractions she created by discussing personal matters at work with staff, frequently being absent or tardy to work, and her lack of focus. There are several incidents that served as the basis for this discipline. For example, on May 18, 2006, Ms. McCray turned over one of the hemo-dialysis machines causing major damage to the machine. She also overflowed the sink attached to the bi-carb mixer on two separate occasions causing water to spill out into the Unit.

13. The third incident of Ms. McCray overflowing the bi-carb mixer sink occurred on July 20, 2006. Ms. McCray failed to check whether the overflow valve was in the on position prior to filling the sink up with water and she left the sink unattended. This incident of flooding was Ms. McCray's third within a three month period of time.

14. At the time of the July 20th incident, Ms. McCray was on FPIC. Vanderbilt's progressive discipline policy provides that an employee may be terminated for any performance issues within six months of being issued a FPIC. Based on the July 20th incident and Ms. McCray's continued performance issues, her employment was terminated effective July 25, 2006.

Mr. Phidd's deposition and his affidavit negate Ms. McCray's contention that she was terminated in "unlawful retaliation for Plaintiff's successfully having complained about her supervisor," as specifically alleged in paragraph 8 of her amended complaint; likewise, they would negate a properly pled claim of retaliation in violation of 29 U.S.C. § 2615. The negation of these essential elements of her retaliation claims required Ms. McCray to produce "evidence of specific

facts establishing that genuine issues of material fact exist" as to the elements of the claims. *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998).

The trial court found that Ms. McCray had "not presented proof or inferences from proof to show a causal connection between her internal complaints and her termination." As noted previously, Mr. Phidd's affidavit references several performance problems leading to Ms. McCray's termination and that her termination was in accordance with VUMC's progressive discipline policy. In addition, the proof shows that another one of Ms. McCray's co-workers, Scott Plemons, was issued an FPIC for the same performance-related reason as Ms. McCray. These facts, which, with respect to an FMLA claim, show a legitimate, non-discriminatory reason for her termination and which, with respect to a common law retaliation claim, show that the filing of the grievances was not the reason for her termination, stand unrebutted in this record.

Ms. McCray has not carried her burden, as non-moving party, of producing, "evidence of specific facts establishing that genuine issues of material fact exist" with regards to her claims of retaliation by VUMC. *McCarley,* 960 S.W.2d at 588; *Byrd,* 847 S.W.2d at 215. The trial court did not err in granting summary judgment.

## III. Conclusion

For the foregoing reasons, the judgment of the trial court granting summary judgment to VUMC is affirmed.

Costs of this appeal are assessed to appellant, Irene McCray, for which execution may issue, if necessary.

_____
RICHARD H. DINKINS, JUDGE