IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 2, 2020

## ANTHONY PARKER v. ABC TECHNOLOGIES, INC. ET AL.

Appeal from the Circuit Court for Sumner County
No. 83CC1-2019-CV-942     Joe Thompson, Judge

_____

### No. M2020-00675-COA-R3-CV
_____

A discharged employee sued his former employer and two managers for (1) retaliatory discharge under the Tennessee Public Protection Act, (2) common law retaliatory discharge, (3) negligent retention, and (4) breach of contract.  The trial court dismissed the employee's claims pursuant to Tennessee Rule of Civil Procedure 12.02(6).  After our independent examination of the pleadings, we conclude that the employee failed to state a claim upon which relief can be granted and affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ARNOLD B. GOLDIN, J., joined.

Anthony Parker, Murfreesboro, Tennessee, Pro Se.

Timothy K. Garrett and L. Lymari Cromwell, Nashville, Tennessee, for the appellees, ABC Technologies Inc., Sara Shield, and James Dash.

### OPINION

### Background

On October 17, 2019, Anthony Parker ("Parker"), proceeding pro se, filed a complaint against ABC Technologies, Inc. ("ABC"), Sara Shield ("Shield"), and James Dash ("Dash") (together, "Defendants") in the Circuit Court for Sumner County (the "trial court").  Parker asserted four separate causes of action: wrongful termination under the Tennessee Public Protection Act ("TPPA"); common law retaliatory discharge; negligent retention of managers; and breach of contract.  He did not attach to the complaint his

alleged contract with ABC. *See* Tenn. R. Civ. P. 10.03 (2020) (providing that, subject to certain enumerated exceptions, "[w]henever a claim is founded upon a written instrument other than a policy of insurance, a copy of such instrument or the pertinent parts thereof shall be attached to the pleading as an exhibit"). The complaint contains the following factual allegations relevant to Parker's claims, which we reproduce verbatim:

10. In 2018[,] Sara Shield HR Manager wrongfully terminated an employee with a disability.

11. In 2019[,] James Dash, 3rd shift General Manager accused of inappropriately touching female hourly associates.

. . . .

13. On August 12, 2019, Anthony Parker signed employment contract as 2nd shift Supervisor.

. . . .

16. Defendants breached the employment contract by changing terms.

17. On August 28, 2018, [sic] while on 3rd shift, James Dash General Manager became threatening and intimidating by saying Phillip the forklift driver does not have to follow my instructions. Phillip was asked by an associate and team leader to bring needed material to press 12 but never did.

. . . .

19. About September 11, 2019, the shipping Team leader found empty beer can after start of shift. She brought it to my attention whereas Plaintiff took picture and showed upper management the beer can. Ty Koelker and Sara Shield were dismissive of beer can found at entrance door by time clock near cafeteria.

20. About September 12, 2019, Ty Koelker, the Operation Manager, covering for James Dash during his vacation on 3rd shift. Ty Koelker used vulgar cursing abusive language threatening associates and Plaintiff. He became irritated by GP12 associates preventing door panels from being shipped out on trucks.

. . . .

22. On September 18, 2019[,] Sara Shield HR Manager and James Dash General manager demanded I sign a job performance plan/ STATEMENT OF UNDERSTANDING.

23. On September 18, 2019, Plaintiff refused to sign job performance plan/Statement of Understanding.

24. On September 19, 2019, submitted complaint on ABC Technologies Inc. ethics hotline reporting alcohol abuse, illegal drugs and hostile work environment, (#447359004501).

25. Reported 3rd shift maintenance man was under the influence of opioids while management was aware.

. . . .

28. On September 25, 2019, Sara Shield said my job was being terminated because I did not sign the Job Performance Plan/STATEMENT OF UNDERSTANDING.

29. ABC Technologies Inc. in Gallatin, Tennessee retaliated by terminating my employment for reporting[] drug and alcohol abuse on 3rd shift creating a hostile work environment managed by James Dash, General Manager.

30. On September 25, 2019, offered severance pay of $5,000.00; the amount was less money than one-month severance in original employment contract.

31. The original employment contract offered Plaintiff 1 months' severance of $65,000. That equals $5,416.66. Not $5,000 offered in severance agreement Plaintiff rescinded.[1]

. . . .

39. Plaintiff alleges refusal to sign statement of understanding was the but for factor in Defendant's decision to terminate employment.

. . . .

---

[1] We construe this allegation to mean that Parker was entitled to one-month's salary or $5,416.66 as severance pay (that is, $65,000.00 divided by twelve months).

46.     Plaintiff made formal complaint on ABC Technologies Inc. ethics hot line was the but for factor in James Dash and Sara Shield's decision to terminate employment.

. . . .

52.     Plaintiff alleges Defendant knew James Dash created a hostile work environment and was accused of inappropriate touching of female associate but was not terminated[.]

53.     Plaintiff alleges Sara Shield wrongfully terminated an employee with a disability [and] has a pattern of terminating employment.

. . . .

55.     Defendant ABC Technologies Inc. did not terminate James Dash or Sara Shield employment after being aware of violating company ethics, moral and violating company policies.

. . . .

72.     Plaintiff alleges refusal to sign statement of understanding was the but for factor in Defendant's decision to terminate employment.

73.     On September 25, 2019, Defendant changed terms of employment contract by offering less money as severance than in original employment contract signed on August 12, 2019[.]

Defendants filed a joint motion to dismiss Parker's complaint in its entirety pursuant to Tennessee Rule of Civil Procedure 12.02(6).[2] Defendants argued that the TPPA and common law retaliatory discharge claims against Shield and Dash should be dismissed because these types of claims do not contemplate individual liability for co-employees. Defendants also argued that the negligent retention and breach of contract claims against Shield and Dash should be dismissed because Shield and Dash could not negligently retain themselves and Parker did not allege a contract between himself and Shield and Dash.

As to ABC, Defendants alleged that the TPPA, common law retaliatory discharge, and negligent retention claims should be dismissed because Parker failed to allege facts supporting one or more elements of these claims. They also alleged that the breach of

---

[2] Rule 12.02(6) permits defendants to file a motion to dismiss a plaintiff's claim for "failure to state a claim upon which relief can be granted." Tenn. R. Civ. P. 12.02(6).

contract claim should be dismissed because Parker did not plead specific facts concerning the existence of a legally binding contract. However, Defendants also attached to their motion "the only alleged employment contract of which Defendant ABC is aware." They argued that under that contract, Parker is guaranteed severance only if "discharged without cause," and pointed to Parker's allegations that he was terminated for refusing to sign a job performance plan. Section 1 of the employment contract states, in relevant part:

> [T]he Employer may terminate this Agreement and the employment of the Employee at any time:
>
> (a)    during the probationary period of three (3) months from the Commencement Date without cause and without prior notice or payment in lieu of notice;
>
> (b)    without cause upon payment of One (1) month' [sic] Basic Salary as severance, and contingent upon the execution of a release and the other conditions contained in Section 14; or
>
> (c)    with cause (determined reasonably and in good faith by the Employer),without prior notice or payment of severance.

Section 4 of the contract states: "It is hereby acknowledged and agreed that the employment relationship created hereby is intended to be an 'employment at will' relationship and that either party may terminate the employment relationship with or without cause at any time subject to the provisions of Section 1." As to compensation, Section 7 of the contract provides that "Basic Salary" of "the Employee . . . shall be . . . (US$65,000), per annum, gross." Parker filed a response to Defendant's motion to dismiss, primarily restating the allegations in his complaint but also attaching a copy of the same unsigned employment contract Defendants had filed with their motion.

On January 24, 2020, the trial court entered an order granting Defendants' motion to dismiss the entire case. On April 28, 2020, the trial court denied Parker's motion to alter or amend its judgment,[3] noting that "in addition to having to accept the well-pled factual allegations in [Parker]'s complaint, the Court also must determine whether those facts are sufficient to assert a legal cause of action. In other words, the Court must determine if those facts state a claim under Tennessee law for which relief can be granted. In that legal analysis, the Court determined that [Parker]'s complaint fails." Parker timely appealed the dismissal of his claims.

---

[3] Parker had filed this motion on January 16, 2020, three days after the trial court heard Defendant's motion to dismiss, but before the trial court entered its January 24, 2020 order granting Defendant's motion. Parker's motion was heard on April 20, 2020, after continuances resulting from the COVID-19 pandemic.

## Issues Presented

Parker asks this Court to review whether the trial court erred in granting ABC's motion to dismiss his claims for (1) violation of the TPPA; (2) common law retaliation; (3) negligent retention; and (4) breach of contract.

## Standard of Review

The standard of review applicable to a trial court's ruling on a motion to dismiss based on Rule 12.02(6) of the Tennessee Rules of Civil Procedure is de novo, with no presumption of correctness. *Phillips v. Montgomery Cnty.*, 442 S.W.3d 233, 237 (Tenn. 2014). A Rule 12.02(6) motion to dismiss challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). Such motion "'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'" *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010) (quoting *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 516 (Tenn. 2005)). Thus, the trial court's ruling must be based on its examination of the pleadings alone. *Webb*, 346 S.W.3d at 426. Moreover, the trial court "must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31–32 (Tenn. 2007). However, for a complaint to survive a motion to dismiss, "[t]he facts pleaded, and the inferences reasonably drawn from these facts, must raise the pleader's right to relief beyond the speculative level." *Abshure v. Methodist Healthcare–Memphis Hosps.*, 325 S.W.3d 98, 104 (Tenn. 2010). "[C]ourts are not required to accept as true assertions that are merely legal arguments or 'legal conclusions' couched as facts." *Webb*, 346 S.W.3d at 427 (citation omitted).

## Analysis

Parker broadly asserts that the trial court erred in dismissing the claims in his complaint because the trial court held him to a higher standard for pleading than that required under Tennessee Rule of Civil Procedure 8.05.[4] We review independently the

---

[4] Rule 8.05 provides:

(1) *Each averment of a pleading shall be simple, concise and direct.* No technical forms of pleading or motions are required. Every pleading stating a claim or defense relying upon the violation of a statute shall, in a separate count or paragraph, either specifically refer to the statute or state all of the facts necessary to constitute such breach so that the other party can be duly apprised of the statutory violation charged. The substance of any ordinance or regulation relied upon for claim or defense shall be stated in a separate count or paragraph and the ordinance or regulation shall be clearly identified. The manner in which violation

allegations in Parker's complaint to determine if they sufficiently state claims upon which relief can be granted. *See* Tenn. R. Civ. P. 12.02(6).

## I. Retaliatory Discharge under the TPPA

Under the TPPA, "[n]o employee shall be discharged or terminated *solely* for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(b) (2014) (emphasis added). To state a claim for relief under the Act, a plaintiff must allege that (1) the plaintiff was an employee of the defendant; (2) the plaintiff refused to participate in or remain silent about illegal activity; (3) the defendant employer terminated the plaintiff's employment; and (4) the sole reason for termination was plaintiff's refusal to participate in or remain silent about the illegal activity. *Davis v. Vanderbilt Univ. Med. Ctr.*, No. M2019-01860-COA-R3-CV, 2020 WL 4516094, at *3 (Tenn. Ct. App. Aug. 5, 2020), *perm. app. denied* (Tenn. Nov. 12, 2020) (citing *Webb*, 346 S.W.3d at 437). Our Supreme Court has emphasized that this statutory cause of action "requires an employee to show that his or her refusal to remain silent was the *sole* reason for the discharge." *Haynes v. Formac Stables, Inc.*, 463 S.W.3d 34, 37 (Tenn. 2015) (citing *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 537 (Tenn. 2002)). The TPPA defines illegal activities as "activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." Tenn. Code Ann. § 50-1-304(a)(3). At all stages of a case, the plaintiff has the burden of establishing a prima facie case of retaliatory discharge. *Id.* § 50-1-304(f).

In his complaint, Parker alleged that on August 28, 2019, Dash "became threatening an intimidating by saying . . . the forklift driver does not have to follow my instructions." Parker also alleged that on September 11, 2019, he "showed upper management" a picture of an empty beer can another employee found near ABC's cafeteria, and that the next day, another employee "used vulgar cursing abusive language threatening associates and [him]." Parker stated that on September 19, 2019, he submitted a complaint via ABC's ethics hotline to report "alcohol abuse, illegal drugs[,] and a hostile environment." He then asserted that ABC terminated his employment because he reported "drug and alcohol abuse on 3rd shift creating a hostile work environment." However, Parker also alleged in his complaint that on September 18, 2019, he "refused to sign job performance plan/Statement

---

of any statute, ordinance or regulation is claimed shall be set forth.

(2) A party may set forth two or more statements of a claim or defense alternatively or hypothetically. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he or she has, regardless of consistency.

Tenn. R. Civ. P. 8.05 (2020) (emphasis added).

of Understanding," and that, a week later, Shield told him that he "was being terminated because [he] did not sign the Job Performance Plan/STATEMENT OF UNDERSTANDING."

As a preliminary matter, Parker's TPPA claim fails as to Shield and Dash because he did not allege he was employed by either one of these defendants. *See Davis*, 2020 WL 4516094, at \*3. Turning to ABC, although Parker alleged circumstances that might reflect poorly on the management of a business or constitute an unpleasant work environment, he did not allege that any of the activities he experienced or reported to his superiors violated a civil or criminal code or regulation, as required by the Act. *See Tidwell v. Holston Methodist Fed. Credit Union*, No. E2019-01111-COA-R3-CV, 2020 WL 3481537, at \*3 (Tenn. Ct. App. June 25, 2020) (stating that TPPA claims fail as a matter of law where plaintiffs do not identify any provisions of the Tennessee or United States Code or any regulations intended to protect the public health or safety); *Konvalinka v. Fuller*, No. E2017-00493-COA-R3-CV, 2019 WL 2323831, at \*8 (Tenn. Ct. App. May 31, 2019) (concluding that defendant employer was entitled to judgment as a matter of law because former employee failed to identify a specific statutory or regulatory provision that he believed had been violated or would be violated). Moreover, Parker alleged that he refused to sign a job performance plan/statement of understanding presented to him by ABC and that Shield told him such refusal was the reason for his termination. Indeed, he alleged that his "refusal to sign [the] statement of understanding was the but[-]for factor in [ABC]'s decision to terminate [his] employment." Compl. ¶¶ 39, 65, 72. Taking Parker's allegations as true, as we must, we are constrained to find that the sole reason for his termination was not an activity protected by the TPPA. We conclude that he failed to state a claim under the Act.

## II. Common Law Retaliatory Discharge[5]

Having determined that Parker did not state a claim for relief under the TPPA, we now consider whether the allegations in his complaint state a claim for common law retaliatory discharge. *See* Tenn. Code Ann. § 50-1-304(g) (providing that the statute "abrogates and supersedes the common law with respect to any claim that could have been brought under this section").

We first note that Parker asserted this second claim purportedly under Tennessee

---

[5] The complaint purports to state a separate cause of action for "Violation of Tennessee's Policy and Implied Contract Employment at will Exceptions." Parker essentially alleges that his termination violated "Tennessee's exception to employment at will policy." Although the trial court did not rule expressly on this issue, pursuant to our de novo review of the complaint and our analysis below, we conclude that Parker's allegations pertinent to this "claim" are properly subsumed within his common law retaliatory discharge claim.

Code Annotated section 50-1-801.[6] We construe this claim as one for retaliatory discharge under common law. *See Lawrence v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, No. E2016-02169-COA-R3-CV, 2017 WL 4476858, at *7 (Tenn. Ct. App. Oct. 6, 2017) (citing Tenn. Code Ann. § 50–1–801 (2017)) ("In the same bill, the General Assembly also simultaneously added section 50–1–801, providing the same burden of proof for common law retaliatory discharge claims."). To state a claim for common law retaliatory discharge, a plaintiff must allege that (1) an employment-at-will relationship existed; (2) he was discharged; (3) the reason for his discharge was that he attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and (4) a substantial factor in the employer's decision to discharge him was his exercise of protected rights or his compliance with clear public policy. *Richmond v. Vanguard Healthcare Servs., LLC*, No. M2014-02461-COA-R3-CV, 2016 WL 373279, at *9 (Tenn. Ct. App. Jan. 29, 2016) (citing *Collins v. AmSouth Bank*, 241 S.W.3d 879, 884 (Tenn. Ct. App. 2007)). Notably, unlike a TPPA claim, a retaliatory discharge claim under common law requires the plaintiff to show that the alleged protected action was a substantial factor, not the sole factor leading to termination. *Id.* (citing *Williams v. City of Burns*, 465 S.W.3d 96, 111 (Tenn. 2015)).

This cause of action aims to balance "'the employment-at-will doctrine and rights granted employees under well-defined public policy.'" *Konvalinka*, 2019 WL 2323831, at *4 (citation omitted). However, this "public policy exception" to the employment-at-will doctrine "must be narrowly construed to prevent it from 'consum[ing] or eliminat[ing] the general rule.'" *Id.* (quoting *Chism v. Mid-S. Milling Co.*, 762 S.W.2d 552, 556 (Tenn. 1988)). Thus, a common law retaliatory discharge claim is available only "'in limited circumstances, [where] certain well-defined, unambiguous principles of public policy confer upon employees implicit rights which must not be circumscribed or chilled by the potential of termination.'" *Quinn-Glover v. Reg'l Med. Ctr. at Memphis*, No. W2011-00100-COA-R3-CV, 2012 WL 120209, at *6 (Tenn. Ct. App. Jan. 17, 2012) (internal quotation marks omitted) (citing *Franklin v. Swift Transp. Co., Inc.*, 210 S.W.3d 521, 530–31 (Tenn. Ct. App. 2006) (citation omitted)).

Like his TPPA claim, Parker's common law retaliatory discharge claim against Shield and Dash fails because he did not allege he was employed by either one. *See Richmond*, 2016 WL 373279, at *9.

Concerning ABC, Parker relied on the same set of facts he alleged to support his TPPA claim. He did not allege, however, that his termination resulted from exercising any specific constitutional or statutory right. Nor did he point to a constitutional, statutory, or regulatory provision to show that his termination violated a clear public policy. These

---

[6] Section 50-1-801 "does not in itself provide a cause of action." *Swanson v. Summit Med. Grp., PLLC*, No. 3:14–CV–39–TAV–HBG, 2014 WL 2208948, at *3 (E.D. Tenn. May 28, 2014).

omissions are fatal to Parker's claim. *Quinn-Glover*, 2012 WL 120209, at \*10 (citing *Gossett v. Tractor Supply Co.*, 320 S.W.3d 777, 787 (Tenn. 2010)) (finding that a complaint's failure to cite a specific public policy as "embodied in the law" did not sufficiently allege a claim of common law retaliatory discharge). In other words, Parker's claim cannot survive "simply by claiming that he believed his employer's actions were 'wrong' or against 'public policy.'" *Konvalinka*, 2019 WL 2323831, at \*5 (quoting *Sanders v. Henry Cnty.*, No. W2008-01832-COA-R3-CV, 2009 WL 1065916, at \*8 (Tenn. Ct. App. Apr. 21, 2009)). Because Parker failed to identify any constitutional, statutory, or regulatory provision implicated by ABC's conduct, his claim fails. Moreover, although Parker alleged that his "formal complaint on [ABC's] ethics hot line was the but[-]for factor" in his termination, he also asserted multiple times that his refusal to sign the job performance plan was also the "but[-]for" factor for his termination. *See* Compl. ¶¶ 39, 65, 72. In light of Parker's conflicting allegations, we conclude that he also failed to allege that his exercise of a protected right was a substantial factor for his termination. Therefore, Parker's complaint did not state a common law claim for retaliatory discharge.

### III. Negligent Retention

Parker alleges that ABC negligently retained its managers Dash and Shield. To establish a claim for negligent hiring, supervision, or retention of an employee, a plaintiff must establish—in addition to the elements of a negligence claim[7]—that the employer had knowledge of the employee's unfitness for the job. *Brown v. Mapco Exp., Inc.*, 393 S.W.3d 696, 703 (Tenn. Ct. App. 2012) (quoting *Doe v. Catholic Bishop for Diocese of Memphis*, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008)). With respect to the employee's unfitness, the plaintiff has the burden of showing that "the employee or independent contractor was not qualified to perform the work for which he was hired." *Davis v. Covenant Presbyterian Church*, No. M2013-02273-COA-R3-CV, 2014 WL 2895898, at \*8 (Tenn. Ct. App. June 23, 2014) (citing *Marshalls of Nashville, Tenn., Inc. v. Harding Mall Assoc., Ltd.*, 799 S.W.2d 239, 243 (Tenn. Ct. App. 1990)); *see also Brown*, 393 S.W.3d at 703 (affirming summary judgment in favor of employer on a negligent retention claim where plaintiff did not make factual allegations showing that employee in question was "unfit for her job").

Parker's allegations are clearly insufficient to state a claim for negligent retention against Shield and Dash. As employees of ABC, Shield and Dash could not also assume the role of employer and "retain" their own employment.

With respect to ABC, Parker averred that Shield and Dash worked as the

---

[7] "It is well-settled that a plaintiff in a negligence action must prove the essential elements of duty, breach of duty, causation in fact, proximate causation, and damages." *Watson v. Payne*, 359 S.W.3d 166, 168 (Tenn. Ct. App. 2011) (citing *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993)).

corporation's HR Manager and 3rd shift General Manager, respectively. He alleged that ABC knew Dash "created a hostile work environment and was accused of inappropriate touching of female associates." The only factual allegation in support of the conclusory allegation that Dash created a hostile work environment is that Dash was "threatening and intimidating" by saying "Phillip the forklift driver does not have to follow my instructions." In the absence of any other factual allegations—and assuming that ABC was aware of Dash's statement about the forklift driver—we have little trouble concluding that Parker failed to allege that Dash was not fit for his job as 3rd shift General Manager. Parker's allegation that Dash was accused of inappropriate touching of female associates does not help his claim. Taking the allegation as true, there is no allegation in the complaint indicating whether the accusations were presented to ABC, whether the accusations were proven true, or anything else that would show that the accusations made Dash unfit for his job. Concerning Shield, Parker alleged that she "wrongfully terminated an employee with a disability [and] has a pattern of terminating employment." Again, the allegation that Shield "wrongfully" terminated an employee is conclusory and unsupported by any factual allegations elsewhere in the complaint. Further, without more, the allegation that Shield had a "pattern of terminating employment" would seem to result squarely from her responsibilities as HR Manager. We conclude that Parker failed to allege that Shield or Dash were unfit for their jobs at ABC, let alone that ABC had knowledge that they were unfit to perform their jobs. As a result, Parker's complaint failed to "aver sufficient facts" to support his negligent retention claim. *See Heflin v. Iberiabank Corp.*, 571 S.W.3d 727, 737 (Tenn. Ct. App. 2018) (affirming grant of motion to dismiss a negligent hiring claim where plaintiff did not allege employee "had a criminal history or record of misbehavior that would have disqualified her from being hired").

## IV. Breach of Contract

We first conclude that Parker failed to state a claim for breach of contract against Shield or Dash because he did not allege entering into any contracts with either employee.

With respect to his former employer, Parker alleged that ABC breached the terms of his employment contract by offering him "severance pay of $5,000.00," which was "less money than [the] one-month severance" contemplated in the "original employment contract [he] signed on August 12, 2019." To recover under a breach of contract theory, a plaintiff must show (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract. *ARC LifeMed, Inc., v. AMC–Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (citing *Life Care Ctrs. of Am., Inc. v. Charles Town Assoc.'s Ltd. Partnership, LPIMC Inc.*, 79 F.3d 496, 514 (6th Cir. 1996)). In addition, Rule 10.03 of the Tennessee Rules of Civil Procedure provides:

Whenever a claim or defense is founded upon a written instrument other than

> a policy of insurance, a copy of such instrument or the pertinent parts thereof shall be attached to the pleading as an exhibit unless the instrument is (1) a matter of public record in the county in which the action is commenced and its location in the record is set forth in the pleading; (2) in the possession of the adverse party and this fact is stated in the pleading; (3) inaccessible to the pleader or is of such nature that attaching the instrument would be unnecessary or impracticable and this fact is stated in the pleading, together with the reason therefor. Every exhibit so attached or referred to under (1) and (2) shall be a part of the pleading for all purposes.

Tenn. R. Civ. P. 10.03.  Thus, under Rule 10.03, the parties are required to attach a copy of written instruments that form the bases for their claims or defenses, absent certain circumstances.  Moreover,  a copy of a written instrument attached to a pleading pursuant to the provisions of the rule becomes a part of the pleading itself.

In its motion to dismiss, ABC argued that Parker "references an employment contract in his Complaint, but does not attach a copy of such alleged contract . . . [and his] claim is, therefore, deficient and lacks sufficient specificity to allege that a valid and enforceable contract exists."  However, ABC attached to its motion a copy of a purported employment contract with Parker and argued that Parker's claim fails because under that contract, he was not entitled to severance pay.  Taking as true Parker's allegation that he signed an employment contract with ABC on August 12, 2019, and given that (1) part of ABC's defense is based on the contents of the contract attached to its motion and (2) Parker himself filed a copy of the very same unsigned contract with his response to ABC's motion to dismiss, we will review the contract's provisions as a part of the pleadings.  *See* Tenn. R. Civ. P. 10.03.

Section 1, subsection (a), of the contract submitted by the parties provides that ABC may terminate "this Agreement and the employment of the Employee at any time . . . during the probationary period of three (3) months from the Commencement Date *without cause and without prior notice or payment in lieu of notice*."  (Emphasis added).  We find this provision unambiguous and, thus, dispositive of Parker's breach of contract claim.  *See Ralph v. Pipkin*, 183 S.W.3d 362, 367 (Tenn. Ct. App. 2005) (citation omitted) ("As long as the terms of a contract are unambiguous, the contract will be enforced as written.").  In his complaint, Parker avers that he is entitled to severance pay as contemplated under the employment contract he signed in August 2019.  He alleges that he was discharged on September 25, 2019, which was well within his three-month probationary period.  As the trial court noted, "the employment contract does not guarantee [Parker] any severance if he is terminated during his probationary period."  Consequently, Parker's claim for breach of contract fails, as a matter of law, because, under the employment contract, ABC had the right to terminate his employment without cause and without payment of severance in any amount.

## **Conclusion**

We affirm the judgment of the Sumner County Circuit Court dismissing Parker's complaint for failure to state a claim upon which relief can be granted. Costs of this appeal are taxed to the appellant, Anthony Parker, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE